SUMMONS ISSUED

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 18 2011 ★

BROOKLYN OFFICE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

VAAD L'HAFOTZAS SICHOS, INC. and ZALMAN
CHANIN, on behalf of themselves and the entire
Chabad-Lubavitcher Chasidic Community;

    *Plaintiffs,*

v.

CHAIM YEHUDAH KRINSKY, YOSSEF B.
FRIEDMAN, MERKOS L'INYONEI CHINUCH, INC.,
MERKOS LYINYONEI CHINUCH, AGUDAS
CHASIDEI CHABAD OF THE UNITED STATES and
"JOHN DOES 1-10";

    *Defendants.*

Civil Action No. MAUSKOPF, J.

**CV 11 - 5658**

GO, M.J.

## COMPLAINT

Plaintiffs, by their undersigned attorneys, allege upon personal knowledge as to their own

acts and upon information and belief as to all other acts as follows:

## NATURE OF THE ACTION

Plaintiffs bring this lawsuit in order to stop the Defendants from interfering with the proper

dissemination and distribution of the teachings of the Lubavitcher Rebbe, Rabbi Menachem Mendel

Schneerson (the "Rebbe"). Plaintiffs are the publisher and copyright holder of many compilations

of the teachings of the Rebbe, known as the Likkutei Sichos, and other publications ("the Vaad

Works"). Plaintiffs have dedicated their lives to the dissemination of the teachings of the Rebbe,

beginning in 1967 when Plaintiff Chanin and others founded Plaintiff Vaad for this very purpose.

Indeed, Vaad's name translates to "Publication Committee of the Rebbe's Discourses."

In a demonstration of greed and hubris by the individual Defendants, the Defendants have

improperly copied and sold many of Plaintiffs' Vaad Works. The Defendants have also engaged in

unfair competition with Plaintiffs in an attempt to put Plaintiffs out of business and to control and

personally profit from the publication of Plaintiffs' Vaad Works. Included among these improper

acts are the denial of access to the priceless Lubavitcher Library. Defendants have engaged in

violations of the United States Copyright Act and Lanham Act and have violated various sections of

the New York General Business Law and common law as well as binding Rabbinical rulings.

Plaintiffs have already suffered damages that exceed $22 million, money that should have

gone to support the dissemination of the teachings of the Rebbe, not into the coffers controlled by

and for the benefit of the individual Defendants (through Defendants Merkos and Agudas, which

are holy institutions that have fallen under the control of the individual Defendants). (Plaintiffs

note that Merkos and Agudas are holy, revered, charitable institutions, who are only named as

Defendants in this case because of legal necessity.) Plaintiffs seek monetary damages, punitive

damages and injunctive relief to stop Defendants' continuing violations of Rabbinic and civil law.

## INTRODUCTION

The Chabad-Lubavitcher sect of Judaism has more than 200,000 followers throughout the

word dedicated to following and disseminating the teachings of the Rebbe. After the physical

passing of the Rebbe in 1994, a date also referred to by the term "Gimmel Tammuz", there has been

no new Chabad Rebbe and the entire Chabad Lubavitcher movement continues to run based on the

Rebbe's guidance and directives. Defendant Chaim Yehuda Krinsky ("Defendant Krinsky"), who

originally worked as the personal chauffeur and aide of the Rebbe, has attempted to take control of

Defendant Merkos and all of its business dealings.

Plaintiffs maintain that many of the acts of Defendant Krinsky were not properly authorized

by Merkos and violate applicable Rabbinic and civil law. Plaintiffs maintain that Defendant Krinsky

has undertaken many of these acts for his own personal gain and that he has unjustly enriched

himself and his family by diverting much of the Chabad-Lubavitcher business activities and the

funds derived from those business activities. Included among these wrongful acts is the handling of the invaluable Lubavitcher Library, in direct violation of prior Federal Court orders. In that case, Judge Sifton held (and the Second Circuit Court of Appeals affirmed) that the vast Lubavitcher Library housed at 770 Eastern Parkway had been "held [by the Rebbe] as personal property for the community's benefit and for charitable uses" and was now in "the custody of Agudas Chabad with an express declaration that it was to be held by that corporation in trust for the benefit of the Chabad Chasidic community." For decades, Plaintiffs had been permitted access to the library in order to prepare and update the Vaad Works. In recent years, Defendant Krinsky has denied access to all but his hand-picked cronies who do his personal bidding, denying the Chabad Chasidic community the benefits of the Lubavitcher Library, in violation of the Court order and Agudas' legal obligations to the community. Plaintiffs seek access to the library on behalf of themselves and the Chabad Chasidic Community.

The latest episode is Defendant Krinsky's attempts to stop Plaintiffs from publishing the teachings of the Rebbe, which Plaintiffs were authorized to do by the Rebbe himself. Beginning in 1967, the Plaintiffs transcribed, edited and compiled the teachings of the Rebbe and have published them as Vaad Work, under proper copyrights. Without permission of the copyright holder, and in clear violation of applicable law, Defendants have copied and sold these Vaad Works and kept the proceeds for themselves. Defendants have also engaged in a series of acts intended to put Plaintiffs out of business so that Defendants alone could profit from the decades of hard work by the Plaintiffs compiling and publishing the teachings of the Rebbe around the world. Indeed, Defendant Krinsky went so far as to install his own son in law, Defendant Yossef B. ("Yosi") Friedman, as the individual who sold and profited directly from the copies of the Vaad Works. Indeed, Plaintiffs believe that the book store located at the corner of 291 Kingston Avenue, adjacent to 770 Eastern

3

Parkway, Lubavitcher World Headquarters (commonly referred to as the "Lubavitcher Showroom and Distribution Center", which Defendant Krinsky gave control of to Defendant Friedman) – alone generates millions of dollars in revenue and profits each year from book sales, of which the most popular seller is the Likkutei Sichos, one of the Vaad Works over which the Vaad has the exclusive right of publication and distribution.

Defendants have engaged in copyright infringement in violation of 17 U.S.C. § 501 et seq., unfair competition in violation of the Lanham Act and § 360-1 of New York General Business Law and various business torts. The remedies sought by Plaintiffs include an accounting of Defendants' profits from the infringement, an impoundment of the infringing works, and injunctive relief to the extent to prevent Defendants from continuing to copy or sell infringing works in violation of the Copyright Act, the Lanham Act and other laws and to enjoin Defendants from interfering with Plaintiffs' attempts to publish and disseminate the teachings of the Rebbe.

In violation of Federal and State Laws, Defendants have pocketed millions of dollars in revenues that rightfully belonged to Plaintiffs, who would have used the money to continue publishing and disseminating the teachings of the Rebbe. Defendants have also violated a ruling of arbitration panels, the Beth Din of Crown Heights and the Beth Din of Tel-Aviv (The Tel-Aviv District Rabbinical Court). The Beth Din of Crown Heights is the rabbinical Court that rules on disputes among the members of Merkos and the Chabad-Lubavitcher sect in Brooklyn. Both Beth Din found Plaintiffs to be the sole and proper publisher and seller of the Vaad Works. To bring Defendants before another rabbinical court would be futile, as they have refused to submit to the rulings of the Beth Din. Plaintiffs have no other recourse but to commence this lawsuit seeking to recoup the more than $22 million that Defendants have diverted from the sale of Plaintiffs' Vaad

4

Works and to enjoin Defendants from continuing to interfere with the proper publishing and dissemination of the teachings of the Rebbe and the Wellspring of the teachings of Chabad.

## JURISDICTION, VENUE AND THE PARTIES

1.     The Court has subject matter jurisdiction over this action.  This case arises under the United States Copyright Act, 17 U.S.C. § 101 et seq. and the Court therefore has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367 over the additional causes of action which substantial and related claims deriving from a common nucleus of operative facts and form part of the same case or controversy as the federal causes of action.

2.     Venue is proper in this district under 15 U.S.C. § 1071(b) and 28 U.S.C. § 1391.

3.     The Court has personal jurisdiction over the Defendants, all of whom are domiciled in this district.

4.     Plaintiff Vaad is a not for profit corporation previously originally located at 788 Eastern Parkway, Brooklyn, New York 11213 and now located at 587 Montgomery Street, Brooklyn, New York 11225.  Vaad was formed in 1967 and incorporated in 1976.

5.     Plaintiff Rabbi Zalman Chanin is a member of the Chabad Chasidic community.

6.     Plaintiff Chanin is a founder and the President of Plaintiff Vaad.

7.     Upon information and belief, Defendant Merkos L'Inyonei Chinuch, Inc. is a New York corporation located at 770 Eastern Parkway, Brooklyn, New York 11213.

8.     Upon information and belief, Defendant Merkos L'Inyonei Chinuch is a New York religious corporation located at 770 Eastern Parkway, Brooklyn, New York 11213.

9.     Upon information and belief, the two Merkos entities listed in the preceding paragraphs were merged.

5

10. Upon information and belief, Defendant Krinsky orchestrated the merging of the two Merkos entities in violation of the bylaws and rules of Defendant Merkos L'Inyonei Chinuch, Inc.

11. Upon information and belief, Defendant Aguda Chasidei Chabad of the United States ("Agudas Chabad") is a New York religious corporation located at 770 Eastern Parkway, Brooklyn, New York 11213.

12. Upon information and belief, Defendant Chaim Yehudah Krinsky is a person who resides at 729 Montgomery Street, Brooklyn, New York 11213.

13. Upon information and belief, Defendant Yosef B. ("Yosi") Friedman is a person who resides at 1439 President Street, Brooklyn, New York 11213.

14. Upon information and belief, Defendants "John Does 1-10" are members, directors, officers or agents of and Agudas Chabad who participated and personally benefited from the acts described herein, each of whom is a person who resides within the City and State of Brooklyn, New York.

## FACTUAL BACKGROUND

15. The terms Lubavitcher and Chabad are used interchangeably to refer to a particular sect of Orthodox Jews in existence for centuries and which, for the last 70 years, has been headquartered in the Crown Heights section of Brooklyn, New York. The Chabad movement was created in approximately 1775 by the first Lubavitcher Rebbe, Rabbi Schneur Zalman of Liadi, and was originally known as "Chasidei Chabad" worldwide and under the branch name Agudas Chasidim Anshe Chabad (subsequently shortened to Agudas Chasidei Chabad) in America beginning in the summer of 1924.

16. The various spiritual leaders of this religious sect are referred to by the title of "Rebbe." Rabbi Menachem Mendel Schneerson (the "Rebbe"), considered by many within the

6

movement to continue be its leader even after his physical passing in 1994 (on a date commonly referred to as "Gimmel Tammuz") succeeded Rabbi Joseph Isaac Schneersohn (the "Previous Rebbe") in 1950.

17.     All of the Rebbes are revered spiritual leaders of the Chabad, and their writings and oral discourses continue to be printed and reprinted. Until recently, the spiritual leadership of the Chabad movement has been an inherited position.

18.     The Previous Rebbe came to the United States in 1940. That same year, Agudas Chasidei Chabad ("Agudas") was incorporated as the umbrella organization of the Chabad movement. Chabad operates through a number of different organizations.

19.     Within Chabad is Machne Israel, Inc. ("Machne"), which primarily provides social services. Since 1994, Machne has been a religious corporation.

20.     Also within Chabad is Merkos L'Inyonei Chinuch, Inc. ("Merkos"), a Defendant herein, which was incorporated in 1942 to act as the educational arm of the Chabad movement.

21.     Also within Chabad is the Kehot Publication Society, which was originally formed at the request of the Previous Rebbe in 1941 to coordinate the Lubavitch publishing activities in order to further the religious mandate of Chabad and spread the "Wellsprings" of Chasidic teaching as widely as possible.

22.     Until his passing in 1950, the Previous Rebbe held the positions as President of Agudas, Machne and Merkos, while the Rebbe, the son-in-law of the Previous Rebbe, held the position of Chairman of the Executive Committees of Merkos and Machne.

23.     After the passing of the Previous Rebbe, the Rebbe became not only the spiritual leader of the Lubavitcher Chassidic movement throughout the world, but became the President of all

7

the Lubavitcher organizations both incorporated and otherwise, including the three corporations, namely Agudas, Machne and Merkos.

24.     Since the physical passing of the Rebbe on Gimmel Tammuz in 1994, there has been no new Chabad Rebbe and the entire Chabad-Lubavitcher movement runs based on the Rebbe's guidance and directives.

25.     Upon information and belief, Defendant Krinsky served as an aide and personal chauffer for the Rebbe.

26.     Upon information and belief, the Rebbe fired Defendant Krinsky and subsequently rehired him only as an act of "chesed" (charity) when implored to do so by members of the Chabad community.

27.     Upon information and belief, beginning after Gimmel Tammuz, Defendant Krinsky claimed that the Rebbe had appointed Defendant Krinsky to be the successor of the Rebbe.

28.     Upon information and belief, the last will and testament of the Rebbe appointed Defendant Krinsky to be the executor of the Rebbe's personal estate, not the successor to the throne.

29.     Upon information and belief, a large segment of the Chabad-Lubavitcher movement, including many directors and officers of Agudas, Machne and Merkos, dispute Defendant Krinsky's claim that the Rebbe had appointed Defendant Krinsky to be the successor of the Rebbe.

30.     Upon information and belief, the Rebbe's express wishes were that three different triumviri would supervise the operations of Agudas, Machne and Merkos.  Upon information and belief, the Rebbe named Defendant Krinsky as one of the three individuals who would participate in running Machne, but not Agudas or Merkos.

31.     Upon information and belief, the Rebbe named Rabbi Hodakov as part of the triumvirate for all three organizations.  Upon information and belief, the Rebbe named Rabbi Nissin

8

Mendel to the two triumviri with authority over Merkos and Machne. Upon information and belief, Defendant Krinsky attempted to consolidate his own personal control over Agudas, Merkos and Machne after Rabbi Hodakov and Rabbi Mendel passed away.

32.     Upon information and belief, a large segment of the Chabad-Lubavitcher movement dispute Defendant Krinsky's authority to act on behalf of the Chabad-Lubavitcher movement.

33.     Upon information and belief, many of the actions taken by Defendant Krinsky in the name of the Chabad-Lubavitcher movement have in fact not been properly authorized or approved by Agudas, Machne and Merkos.

34.     Upon information and belief, Defendant Krinsky lacked the proper authority for many of the actions he has taken in the name of the Chabad-Lubavitcher movement.

35.     Upon information and belief, Defendant Krinsky has engaged in a series of *ultra vires* acts in the name of the Chabad-Lubavitcher movement.

36.     Upon information and belief, many of the actions taken by Defendant Krinsky in the name of Merkos have in fact not been properly authorized or approved by the officers and directors of Merkos.

37.     Upon information and belief, Defendant Krinsky lacked the proper authority for many of the actions he has taken in the name of Merkos.

38.     Upon information and belief, Defendant Krinsky has engaged in a series of *ultra vires* acts in the name of Merkos.

39.     Plaintiff Vaad L'Hafotzas Sichos ("Vaad" or "Plaintiff Vaad") was formed in 1967 to reduce to writing and to publish the weekly Sichos (talks or sermons) of the Rebbe for weekly distribution in pamphlet form throughout the Chabad community. Plaintiff Chanin was among the founders of Vaad and has served as its President for many years. Until the Rebbe's second stroke in

9

1994, the Rebbe provided detailed guidance directly to Plaintiffs in connection with the publication of his works.

40.    For the more than 40 years since distributing its first such pamphlet, Plaintiffs have published pamphlets every week for a total of thousands of pamphlets and over 160 titles – each in multiple editions and printings of many tens of thousands of copies.

41.    The Rebbe himself determined the suitability of the proposed works to be published by Vaad and approved the publishing of the works under the Vaad name and copyright.

42.    The Rebbe himself made personal donations to Vaad in order to sponsor the publishing of Sichos – the Vaad's book of the Rebbe's discourse -- in the memory of his loved ones.

43.    The Rebbe's personal donations were in recognition of the fact that Vaad was the publisher and copyright holder of these publications.

44.    At certain times through 1992, Merkos paid Vaad for the Vaad Works in question that were sold by Merkos to consumers at the bookstore located at the corner of Eastern Parkway and Kingston Avenue, adjacent to Lubavitcher World Headquarters.

45.    The payments by Merkos constitute an admission and recognition of the fact that Vaad was the publisher and copyright holder of these publications.

46.    Through the present, Vaad has continued publishing the works of Chabad teaching, including at least ten full books and about 100 pamphlets, all in accordance with the guidelines that had previously been approved by the Rebbe, under the copyright of the Vaad.  Vaad has continued to publish its own works, including the 39 Volume set of Likkutei Sichos, the 12 Volume set of Sefer Hasichos, the 8 Volume set of Maamorin (Melukat and Basi Leani) part of which was published in 1994, a new 46 volume set of Likkutei Sichos in 2004, English translations of Likkutei Sichos and other works, as well as more than 50 various books (hereinafter, the "Vaad Works").

47.     Vaad is and was the proper copyright owner of each of the Vaad Works, including the Likkutei Sichos.

48.     Vaad has filed a copyright registration with the United States Copyright Office for all of the Vaad Works. The Copyright Registration for the Likkutei Sichos, which bears Registration No. TX4-897-182, is annexed to the Complaint as Exhibit A and incorporated herein by reference.

49.     Each of the Vaad Works was an original work that was transcribed, edited and printed by Plaintiffs.

50.     The costs of transcribing, editing and printing the original Vaad Works were paid for by Plaintiffs.

51.     The funds to cover the costs of publishing and distributing the Vaad Works were provided from Plaintiffs' sale of publications by Plaintiffs or by charitable donations solicited by and made to Plaintiffs for these purposes.

52.     Vaad published each of the Vaad Works with a notice that Vaad held the copyright.

53.     Defendants were on actual notice of Vaad's publishing of each of the Vaad Works under Vaad's copyright.

54.     The Defendants' copying of the Vaad works violates State, Federal and Rabbinic law.

55.     Among the Chabad Chasidic Lubavitch, it is customary for property disputes to be ruled upon by Chabad Rabbis, either as a Beth Din (Rabbinical Court) or in a ruling by an esteemed Rabbi. On a number of occasions, including in the Fall of 1979 (on the Sabbath of VaYishlach), the Rebbe actually stated publicly that the local Chabad Rabbi of Crown Heights, Rabbi Zalman Shimon Dworkin, had the authority to make rulings that even the Rebbe was required to follow.

11

56.     On December 17, 1978, long before Gimmel Tammuz, Rabbi Dworkin issued a ruling that Plaintiff Vaad "alone has the exclusive right to publish in printing all the subjects pertaining to [the Rebbe's] teachings in any language."

57.     On February 11, 2000, the Beth Din of Crown Heights (a rabbinical court) found that the Rebbe had "instructed that the Vaad L'Hafotzas Sichos . . . is the publisher of all the above mentioned books [including the Likkutei Sichos] during all the years."

58.     The Rebbe also issued decrees that the members of the Chabad community, which includes the named Defendants herein, were obligated to follow the rulings of the Beth Din of Crown Heights.  These decrees included instructions regarding the authority of the Rabbis who had been elected to the Beth Din of Crown Heights (on February 28, 1987) and regarding the Beth Din's authority to rule on monetary claims made by Chabad emissaries (in November 1987, Sabbath Chayei Sara).

59.     Like Rabbi Dworkin, the Beth Din of Crown Heights also ruled that "it is PROHIBITED for any person or organization – itself or through its agents – to print the books 'Likkutei Sichos' or any other books that were published by the above mentioned institution [in large part because] the members of the Vaad have invested enormous amounts of resources and energy to publish the teachings of the Rebbe in orderly fashion with commentaries and explanations and to to disseminate them in the entire world for all to relish our Rebbe's teachings."

60.     On July 18, 2003, another Rabbinical Court, the Tel-Aviv District Rabbinical Court, issued a similar ruling in favor of Plaintiff Vaad "the deliberation here is not about selling watermelons and the like, the deliberation revolves about the sale and distribution of living divine words, the words of [the Rebbe] and anyone who is interested in bringing these holy words into his house, should remember . . . One who reads the same as one who hears how can he allow himself to

purchase books with the intention to bring the divine presence into his house, while there is a claimant who shouts 'Guevald' [help!] they robbed me, they trampled me and my work of many years. And all the excuses and arguments have no real substance in them."

61.    Upon information and belief, Defendants have knowingly, willfully and intentionally violated and flouted the two separate Beth Din rulings and the previous ruling of Rabbi Dworkin regarding the Vaad's ownership and exclusive rights to publish the Likkutei Sichos.

62.    Upon information and belief, Defendants Merkos and the individual Defendants have availed themselves of the Beth Din of Crown Heights when it suited them, but have refused to comply with the edicts of the Beth Din when it rules against them, as in the present case..

63.    Plaintiffs never gave Defendants permission to copy the Likkutei Sichos or any of the Vaad Works.

64.    Upon information and belief, Defendants have copied the Vaad Works, including the Likkutei Sichos.

65.    Upon information and belief, Defendants' copies of the Vaad Works were identical to the Vaad Works (or at the very least were similar enough to demonstrate probative similarity, substantial similarity and striking similarity to the Vaad Works).

66.    Upon information and belief, Defendants copied the Vaad Works in their entirety, removing only the name of the Vaad as publisher and copyright holder.

67.    Upon information and belief, Defendants' copying of the Vaad Works infringes upon the Vaad's copyrights.

68.    Upon information and belief, Defendants have sold copies of the Vaad Works.

69.    Upon information and belief, Defendants have received in excess of $22 million of dollars for the copies of the Vaad Works that they have sold without Plaintiffs' permission.

13

70.     Upon information and belief, Plaintiffs have been damaged by the Defendants' copyright infringement and are entitled to recover in excess of $22 million dollars from the Defendants.

71.     Upon information and belief, at the direction of Defendant Krinsky, Defendants have engaged in many wrongful acts intended to put Plaintiffs out of business so that the individual Defendants could control and be personally enriched by the publishing of the teachings of the Rebbe, including the Vaad Works.

72.     One example of Defendants' malicious, improper acts designed to injure Plaintiffs, unjustly enrich the individual Defendants and interfer with the dissemination of the teachings of the Rebbe, is the Defendants' eviction of Plaintiffs from the offices that they had occupied at 788 Eastern Parkway for decades.  Defendant Krinsky had Plaintiffs evicted and gave the office space to one of Defendant Krinsky's sons, who has personally enriched himself through the sale of video footage of the Rebbe to Chabad disciples and to others around the world from those offices.

73.     Another example of Defendants' malicious, improper acts designed to injure Plaintiffs, unjustly enrich the individual Defendants and interfere with the dissemination of the teachings of the Rebbe, is the handling of the invaluable Lubavitcher Library that had been accumulated by the Previous Rebbe, the Rebbe and others for the benefit of the Chabad Chasidic community.

74.     For decades, Plaintiffs had been permitted access to the Lubavitcher Library in order to prepare and update the Vaad Works.  For some time, Defendant Krinsky has denied access to all but his hand-picked cronies who do his personal bidding, denying the Chabad Chasidic community the benefits of the contents of the priceless Lubavitcher Library.  This denial of access to the

14

Lubavitcher Library is a violation of a prior Court order and Agudas Chabad's legal obligations to the Chabad community.

75. The ownership and control of the Lubavitcher Library was the subject of a litigation brought by Defendant Agudas Chabad against the grandson of the Previous Rebbe (the nephew of the Rebbe's wife). In that lawsuit, captioned *Agudas Chasidei Chabad of United States v. Gourary*, CV–85–2909, Defendant Agudas successfully sought a declaration that the Lubavitcher Library was not the personal property of the Previous Rebbe and was in fact the property of Agudas Chabad (the "Lubavitcher Library Litigation").

76. In the Lubavitcher Library Litigation, Judge Sifton ruled (as was explained in a memorandum opinion dated January 6, 1987) that the vast Lubavitcher Library housed at 770 Eastern Parkway had been "held [by the Rebbe] as personal property for the community's benefit and for charitable uses" (*Id.* at 1476) and was now in "the custody of Agudas Chabad with an express declaration that it was to be held by that corporation in trust for the benefit of the Chabad Chasidic community." See *Agudas Chasidei Chabad v. Gourary*, 650 F. Supp 1463, 1476 (EDNY 1987) (Sifton, J.), *aff'd,* 833 F.2d 431(2d Cir. 1987). As the Court of Appeals explained, in 1987 the Lubavitcher Library was a "40-50,000 volume library consisting of sacred manuscripts and a variety of religious books [which] may be divided into two parts, the *ksovim* ("writings") and *seforim* ("books"). The *ksovim* are statements of the Lubavitcher Rebbes, generally handwritten by the Rebbes themselves and passed down from one Rebbe to the next. Found in these writings are the basic tenets of the Chasidic beliefs, and the *ksovim* serve as a source for a Rebbe's discourses to the community. These sacred writings have always been preserved by the Rebbes, whatever the cost. The bulk of the library consists of the *seforim,* presently around 40,000 texts." 833 F.2d at 433. The Court of Appeals then affirmed the district court's findings that the Lubavitcher Library was

15

"delivered into the custody of Agudas Chabad with an express declaration that it was to be held by that corporation in trust for the benefit of the Chabad Chasidic Community." 650 F.Supp. at 1476. The trial court further concluded that there was "evidence sufficient to persuade [it] beyond a reasonable doubt that the Rebbe delivered his library to representatives of plaintiff with a clear and unequivocal" intent to create a trust, subjecting the plaintiff corporation to the duty of administering the library for charitable purposes. *Id.*" 833 F.2d at 437.

77.     Upon information and belief, Defendant Krinsky has personally decided which individuals will be granted access to the Lubavitcher Library and for what purposes.

78.     Upon information and belief, Defendant Krinsky has only granted access to the Lubavitcher Library to cronies of his who serve his personal interests.

79.     Defendants have, with malice and intending to injure Plaintiffs, improperly denied Plaintiffs access to the Lubavitcher Library.

80.     Plaintiffs seek access to the Lubavitcher Library on behalf of themselves and the other members of the Chabad Chasidic community in order to properly disseminate the teachings of the Rebbe.

81.     Due to his success in organizing and operating the publication of the Vaad Works on behalf of the Vaad, Plaintiff Chanin was asked by the Rebbe to take over the responsibility of operating the Kehos Publication Society's publishing of other publications as well. Those responsibilities were given to Plaintiff Chanin long after Vaad had been given the right to use the office space at 788 Eastern Parkway "rent free."

82.     The arrangement was memorialized in a memorandum dated December 24, 1978.

83.     Plaintiff Chanin successfully and profitably directed the publishing of books on behalf of the Kehot Publication Society for many years.

84.     As the Rebbe had requested, Plaintiff Chanin simultaneously directed the publication of works on behalf of the Kehot Publication Society and the publication of the Vaad Works (including the Likkutei Sichos).

85.     Pursuant to the agreement between Plaintiffs and the Kehot Publication Society, the Kehot Publication Society was responsible for the expenses associated with the publication of the Kehot Publication Society's books and materials.

86.     During this time, Plaintiff Vaad continued to raise money through direct private contributions, from allocations given by the Rebbe to all Chabad-affiliated organizations, and to pay the expenses associated with the publication of the Vaad Works.

87.     As admitted by Defendant Krinsky in the case of *Agudas v. Gourary, et al,* Defendant Merkos and the Kehot Publication Society are two separate organizations. Merkos is responsible for educational services and the Kehot Publication Society is responsible for publishing.

88.     Throughout Plaintiffs' work on behalf of the Kehot Publication Society until the death of Rabbi Chaim Mordechai Hodakov, the Rebbe's unofficial Chief of Staff and the head of the Rabbinical Secretariat, in 1993, it was Rabbi Hodakov, not Defendant Krinsky, who authorized all payments to Vaad for such work. Until taking control of the Merkos business activities after the death of Rabbi Hodakov in 1993, Defendant Krinsky had no actual or apparent authority over the activities the Kehot Publication Society or the running of the Lubavitcher bookstore.

89.     Without just cause, on or about January 25, 1994 Defendant Krinsky had Plaintiffs Chanin and Vaad evicted from the spacious offices that Plaintiffs had occupied at 788 Eastern Parkway for many years, and "terminated" Plaintiff Chanin from performing any "services on behalf of Merkos, Kehot and Otzar HaChassidim." As part of this wrongful termination and eviction, Defendants improperly seized valuable books and manuscripts that were the property of Plaintiffs

and which Plaintiffs had used as reference sources in order to accurately publish and disseminate the discourses of the Rebbe.

90.     Upon information and belief, certain of these books are located in the Lubavitcher Library, to which Plaintiffs have been denied access.

91.     Upon information and belief, Defendants improperly seized volumes of the Likkutei Sichos that had been in the Vaad offices awaiting distribution and were the rightful property of Vaad.  Upon information and belief, Defendants  sold these copies of the Likkutei Sichos for more than $100,000.

92.     Upon information and belief, Defendant Krinsky's malice towards Plaintiffs and his campaign to injury Plaintiff Chanin is a direct result of Plaintiff Chanin's opposition to Defendant Krinsky's attempts to consolidate and wield control of Merkos and Agudas for himself.

93.     Upon information and belief, Defendant Krinsky's malice towards Plaintiffs has resulted in libel, slander and defamation of Plaintiff Chanin.

94.     Upon information and belief, Defendant Krinsky orchestrated the bringing of a lawsuit against Plaintiff Chanin and others in which it was falsely alleged that Plaintiff Chanin had converted funds that belonged to Merkos and the Merkos bookstore to Plaintiff Chanin's personal use (the "Citibank Case").

95.     Upon information and belief, Defendant Merkos first attempted to sue Plaintiff Chanin and Jacob Reich, who ran the Merkos bookstore until Rabbi Hodakov died and Rabbi Krinsky took control of Merkos' business activities and fired Mr. Reich so as to gain direct control over the business of the bookstore.

96.     Upon information and belief, when the Beth Din instructed Merkos to withdraw its civil suit against Plaintiff Chanin and Reich, Merkos sued Citibank, the financial institution at which

Plaintiff Chanin had maintained his personal and company accounts, and Citibank named Plaintiff Chanin, among others, as a third-party Defendant.

97.    Upon information and belief, Citibank adopted Defendant Merkos' false allegations that Plaintiff Chanin and Reich had facilitated the conversion of Merkos funds. Upon information and belief, Defendant Krinsky orchestrated the broad dissemination of these false allegations among the Chabad community, damaging the reputations of Reich and Plaintiff Chanin.

98.    Contrary to the false allegations, New York State Supreme Court Justice Beverly Cohen found no evidence of wrongdoing on the part of either Reich or Plaintiff Chanin, holding "no money was misappropriated by third-party defendants Jacob Reich or Zalman Chanin." Judge Cohen also held that Defendant "Krinsky's testimony disclosed a broad unfamiliarity with the operation of the bookstore."

99.    Despite the Court's finding of no wrongdoing, and Defendant Krinsky's personal knowledge of Justice Cohen's exoneration of Plaintiff Krinsky, there has never been a retraction of the slanderous statements regarding Plaintiff Chanin in the Chabad community. Upon information and belief, Defendant Krinsky has recently reiterated these false allegations and broadly stated, without citing any facts or evidence, that "there were other thefts as well that were never adjudicated". Upon information and belief, Defendants bear responsibility for these false accusations and both Defendant Krinsky and certain of the John Doe Defendants are responsible for allowing the false inferences to remain uncorrected and damaging Plaintiff Chanin's reputation.

## FIRST CAUSE OF ACTION (COPYRIGHT INFRINGEMENT)

100.    Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

19

101.  Defendants have copied or printed and sold copies of the Vaad Works (including without limitation the copyrighted Likkutei Sikkos) that are substantially similar, if not virtually identical, to the Vaad Works.

102.  Upon information and belief, Defendants have made substantial profits from their sale of such infringing publications.

103.  Plaintiffs are entitled to recover damages, which include their actual losses and any and all profits that Defendants have made as a result of their infringing conduct, under 17 U.S.C. § 504. Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c).

104.  Upon information and belief, Defendants' actions are willful in that its actions were, at a minimum, in reckless disregard of Plaintiffs' rights to the Vaad Works. Accordingly, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

105.  Moreover, as Defendants' actions were willful, an award of attorney's fees should be awarded to Plaintiffs in accordance with 17 U.S.C. § 505.

106.  Additionally, Plaintiffs will continue to be damaged by Defendants' activities and conduct unless preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 is awarded.

## SECOND CAUSE OF ACTION (LANHAM ACT)

107.  Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully set forth herein.

108.  It was and is common knowledge among the disciples of the Rebbe, and all followers of the Chabad-Lubavitcher sect of Judaism, that the transcription, editing and publication of the Rebbe's discourses and teachings could only be done by those given express permission to do so by the Rebbe.

20

109. It was and is common knowledge among the disciples of the Rebbe, and all followers of the Chabad-Lubavitcher sect of Judaism, that the Rebbe had decreed that only those who had performed the work could and should profit from the fruits of the labor.

110. By copying the Vaad Works and offering them for sale to the disciples of the Rebbe and the followers of the Chabad-Lubavitcher sect of Judaism, Defendants have misled the purchasers to believe that (a) Defendants had performed the laborious work of editing, transcribing and publishing the publications in question, and that those publications' origin was with Defendants, and/or (b) the Rebbe had given Defendants approval to edit, transcribe, publish and profit from the sale of the publications in questions.

111. Copying of the Vaad Works constitutes an attempt by Defendants to pass off and palm off its copies of the Vaad Works as those properly authorized for sale by the Rebbe, with the intent to deceive and defraud the public and appropriate to itself Plaintiffs' rights in and to the Vaad Works.

112. Such acts constitute acts of unfair competition against Plaintiffs under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(l)(B).

113. Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Accordingly, Plaintiffs are entitled to recover their damages, as well as Defendants' profits, received as a result of Defendants' conduct, pursuant to 15 U.S.C. § 1117(a).

114. Unless Defendants are enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by monetary damages.

21

## THIRD CAUSE OF ACTION (NY GBL § 349)

115.   Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully set forth herein.

116.   Defendants' actions constitute unfair competition and deceptive practices in violation of New York General Business Law § 349.

117.   Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Accordingly, Plaintiffs are entitled to recover their damages, as well as Defendants' profits, received as a result of Defendants' conduct.

118.   Unless Defendants are enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by monetary damages.

## FOURTH CAUSE OF ACTION

## (UNFAIR COMPETITION AND MISAPPROPRIATION)

119.   Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

120.   Plaintiffs have made a substantial investment of time, effort, and money in creating the Vaad Works.

121.   The Vaad Works are the property of Plaintiffs. Defendants have appropriated the Vaad Works at little or no cost to Defendants.

122.   Defendants' acts have caused a direct diversion of profits from the Plaintiffs to the Defendants.

123.   Plaintiffs are entitled to recover damages, which include their actual losses and any and all profits that Defendants have made as a result of their misappropriation of the Vaad Works.

124.   Additionally, Plaintiffs will continue to be damaged by Defendants' activities and conduct unless preliminary and permanent injunctive relief is awarded.

## FIFTH CAUSE OF ACTION (UNJUST ENRICHMENT)

125.   Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

126.   It would be inequitable for Defendants to be permitted to continue to interfere with and deny Plaintiffs their exclusive right to publish and sell the Vaad Works, including the Likkutei Sichos.

127.   It would be inequitable for Defendants to be permitted to continue to copy and sell the copies of the the Vaad Works, including the Likkutei Sichos.

128.   It would be inequitable for Defendants to retain the revenues, profits and equity from the copying and sale of the copies of the Vaad Works, including the Likkutei Sichos.

129.   Plaintiffs are entitled to recover damages, which include their actual losses and any and all profits that Defendants have made as a result of their misappropriation of the Vaad Works.

130.   Additionally, Plaintiffs will continue to be damaged by Defendants' activities and conduct unless preliminary and permanent injunctive relief is awarded to stop any further unjust enrichment.

## SIXTH CAUSE OF ACTION
## (TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONSHIPS

131.   Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

132.   Plaintiffs have had valid contracts and/or business relationships and expectancies with their vendors, buyers and donors.

133.   Defendants had knowledge of these valid contracts.

23

134.   Defendants, acting without authorization or privilege, and with knowledge of these contracts, business relationships and expectancies, have, as a result of the actions set forth above, wrongfully interfered with these contracts, business relationships and expectancies.

135.   Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches and disruptions of Plaintiffs' contracts, business relationships and expectancies.

136.   As a result of Defendants' intentional and improper interference, Plaintiffs suffered damages, including, without limitation, damages to their reputation among the vendors, buyers and donors, and Plaintiffs are entitled to recover against Defendants in an amount to be determined at trial, which amount Plaintiffs believe to be in excess of $22 million.

137.   That at all times hereinafter mentioned, Defendants acted with gross negligence, reckless disregard of Plaintiffs' rights and with malice and oppression in their actions and material omissions, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

138.   Upon information and belief, unless enjoined, Defendants' actions will cause further harm to Plaintiffs by, among other things, denying Plaintiffs' potential additional profits, revenues and other benefits from the contracts that would be either unquantifiable or deemed speculative and otherwise irreparably harming Plaintiffs in a manner that could not be rectified by a monetary judgment.

### SEVENTH CAUSE OF ACTION
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS)

139.   Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

140.   Plaintiffs entered into valid agreements with prospective vendors, buyers and donors.

141.   Defendants had knowledge of these valid agreements.

24

142. Defendants willfully, intentionally and maliciously interfered with Plaintiffs' valid agreements by their aforestated actions as stated above and by acting in a manner so as to deprive them of the benefits of their agreements.

143. Plaintiffs have been damaged as a result of Defendants' intentional and malicious interference with its valid agreements and is entitled to recover against Defendants in an amount to be determined at trial, which amount Plaintiffs believe to be in excess of $22 million.

144. At all times hereinafter mentioned, Defendants acted with gross negligence, reckless disregard of Plaintiffs' rights and with malice and oppression in their actions and material omissions, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

145. Upon information and belief, unless enjoined, Defendants' actions will cause further harm to Plaintiffs by, among other things, denying Plaintiffs' potential additional profits, revenues and other benefits from the prospective business relations that would be either unquantifiable or deemed speculative and otherwise irreparably harming Plaintiffs in a manner that could not be rectified by a monetary judgment.

## EIGHTH CAUSE OF ACTION
## (FEDERAL ARBITRATION ACT ENFORCEMENT OF BETH DIN RULING)

146. Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

147. The Beth Din was an arbitration panel that complied with all of the procedural requirements of the Federal Arbitration Act (and those of Article 75 of the New York Civil Practice Law and Rules).

148. The Beth Din heard evidence and found Plaintiff Vaad was the exclusive publisher and owner of the Vaad Works.

149.   The Beth Din properly ruled that, under applicable law, that all others were prohibited from publishing copies of the Vaad Works/Likkutei Sichos.

150.   The ruling of the Beth Din is enforceable.

151.   Defendants were placed on proper notice of the ruling of the Beth Din.

152.   Defendants failed to timely bring an action to vacate or modify the ruling of the Beth Din.

153.   This Court should confirm and enforce the ruling of the Beth Din.

## NINTH CAUSE OF ACTION
## (BREACH OF FIDUCIARY DUTY – LUBAVITCHER LIBRARY)

154.   Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

155.   Controlling rulings of the federal courts for the Eastern District of New York and the Second Circuit Appeals have determined that (a) the Lubavitcher Library is held by Agudas Chasidei Chabad in trust for the benefit of the Chabad Chasidic Community, and (b) Agudas Chasidei Chabad has the duty of admininistering the Lubavitcher Library for charitables purposes and the benefit of the Chabad Chasidic Community.

156.   Upon information and belief, certain of the individual Defendants are directors, officers and members of the Agudas Chasidei Chabad religious corporation and as such, have the fiduciary obligation to the members of the Chabad Chasidic Community to administer the Lubavitcher Library for charitable purposes and the benefit of the Chabad Chasidic Community.

157.   Upon information and belief, Defendants have breached their fiduciary obligations and the duties of administering the Lubavitcher Library for charitables purposes and the benefit of the Chabad Chasidic Community.

158. Upon information and belief, Plaintiffs have been damaged as a result of Defendants' breaches of their fiduciary obligations and duty with respect to the Lubavitcher Library, and are entitled to recover against Defendants in an amount to be determined at trial.

159. At all times hereinafter mentioned, Defendants acted with gross negligence, reckless disregard of Plaintiffs' rights and with malice and oppression in their actions and material omissions, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

160. Upon information and belief, unless enjoined, Defendants' actions will cause further harm to Plaintiffs by, among other things, denying Plaintiffs the access to the Lubavitcher Library for charitable purposes, which harm would be either unquantifiable or deemed speculative and otherwise irreparably harming Plaintiffs in a manner that could not be rectified by a monetary judgment.

161. Upon information and belief, unless enjoined, Defendants' actions will cause further harm to the entire Chabad Chasidic Community by, among other things, denying the members of the Chabad Chasidic Community access to the Lubavitcher Library for charitable purposes, which harm would be either unquantifiable or deemed speculative and otherwise irreparably harming the Chabad Chasidic Community in a manner that could not be rectified by a monetary judgment.

162. Accordingly, Plaintiffs seek an order compelling Defendants to provide access to the Lubavitcher Library and all books and records regarding the Lubavitcher Library.

## TENTH CAUSE OF ACTION
## (CONVERSION OF LUBAVITCHER LIBRARY)

163. Plaintiffs repeat and reallege the allegations of all preceding paragraphs of the Complaint, as though fully contained herein.

27

164. Upon information and belief, Defendants have had the fiduciary obligation to hold the Lubavitcher Library in trust for the members of the Chabad Chasidic Community, including Plaintiffs.

165. Upon information and belief, Defendants have instead converted the valuable Lubavitcher Library to their own personal use and gain.

166. Upon information and belief, this constitutes a conversion of property rightfully belonging to the Chabad Chasidic Community.

167. Upon information and belief, Plaintiffs have been damaged as a result of Defendants' breaches of their fiduciary obligations and duty with respect to the Lubavitcher Library, and the conversion of this valuable property and are entitled to recover against Defendants in an amount to be determined at trial.

168. At all times hereinafter mentioned, Defendants acted with gross negligence, reckless disregard of Plaintiffs' rights and with malice and oppression in their actions and material omissions, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

169. Upon information and belief, unless enjoined, Defendants' actions will cause further harm to Plaintiffs, which harm would be either unquantifiable or deemed speculative and otherwise irreparably harming Plaintiffs in a manner that could not be rectified by a monetary judgment.

170. Upon information and belief, unless enjoined, Defendants' actions will cause further harm to the entire Chabad Chasidic Community, which harm would be either unquantifiable or deemed speculative and otherwise irreparably harming the Chabad Chasidic Community in a manner that could not be rectified by a monetary judgment.

171. Accordingly, Plaintiffs seek an order compelling Defendants to provide access to the Lubavitcher Library and all books and records regarding the Lubavitcher Library.

28

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

A.     That Defendants and their respective agents, servants, employees, contractors, and all persons, corporations, or entities acting under Defendants' direction, authority, or control, and all persons acting in concert with any of them, be enjoined preliminarily and permanently from: (i) creating, importing, purchasing, distributing, displaying, selling, offering to sell books, pamphlets or other publications that infringe upon the Vaad Works; (ii) using Plaintiffs' copyrights or any copy or imitation of any of them in any manner; (iii) denying or improperly limiting Plaintiffs' access to and use of the Lubavitcher Library and all books and records regarding the contents of the Lubavitcher Library and (iv) repeating the slanderous allegations about Plaintiffs (and refusing to make a public retraction of the prior false accusations and allegations);

B.     That Defendants be required to account pursuant to 17 U.S.C. § 504 for Plaintiffs' losses and Defendants' profits derived from advertising, promoting, marketing, purchasing, distributing, displaying, selling, offering to sell the infringing books, pamphlets or other publications;

C.     That all infringing books, pamphlets or other publications, and all advertising incorporating Plaintiffs' copyrights, or any copy or imitation of any of them, be surrendered, impounded, and turned over to Plaintiffs pursuant to 17 U.S.C. § 503;

D.     That Defendants be ordered to pay damages for their copyright infringement;

E.    That Plaintiffs be awarded damages, in an amount to be determined at trial, in

connection with Defendants' acts of misappropriation, unfair competition and other violations of

New York law;

F.    That Defendants be ordered to pay Plaintiffs' costs incurred herein, including

reasonable attorney's fees, pursuant to 17 U.S.C. § 505; and

G.    That this Court award Plaintiffs such further relief as the Court may deem just and

proper.

Dated: November 18, 2011

                                        Respectfully submitted,


                                        LAW OFFICES OF MITCHELL C. SHAPIRO


                                        By:    _____
                                        Mitchell C. Shapiro, Esq. (#9019)
                                        15 Cutter Mill Road #207
                                        Great Neck, New York 11021
                                        Telephone:  (516) 570-2773
                                        Facsimile:  (516) 829-1555
                                        Email:  mcs@mcshapirolaw.com
                                        *Counsel for the Plaintiffs*

                                        30

# Ex. A

**FORM TX**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TX 4-897-182**

09920551.

EFFECTIVE DATE OF REGISTRATION

**7 · 23 · 98**

Month    Day    Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼

**LIKUTEI SICHOS**

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION  If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

**a**

NAME OF AUTHOR ▼

**VAAD L'HAFOTZAS SICHOS**

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
on { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP   Briefly describe nature of the material created by this author in which copyright is claimed. ▼
**compilation, editing, and translation of lectures**

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
on { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No

NATURE OF AUTHORSHIP   Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**c**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
on { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No

NATURE OF AUTHORSHIP   Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3**

**a**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given
**1992-1990**  ◄ Year  in all cases.

**b**

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information  Month ▶ **April**    Day ▶ **10**    Year ▶ **1998**
ONLY if this work has been published.    Nation ▶ **U.S.A.**    ◄ Nation

**4**

COPYRIGHT CLAIMANT(S)  Name and address must be given even if the claimant is the same as the author given in space 2.▼
**VAAD L'HAFOTZAS SICHOS**
**788 Eastern Parkway**
**Brooklyn, NY 11213**

APPLICATION RECEIVED  **7/23/98**
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED  **7/23/98**
REMITTANCE NUMBER AND DATE

TRANSFER  If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 10.

DO NOT WRITE HERE

Page 1 of ___ pages

*Added by C.O. from deposit material.

EXAMINED BY

CHECKED BY

CORRESPONDENCE
Yes

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION**  Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material   Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work   Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space.

## —space deleted—

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS**   A signature on this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.

a ☐ Copies and Phonorecords          b ☐ Copies Only          c ☐ Phonorecords Only

**8**

See instructions.

**DEPOSIT ACCOUNT**   If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                              Account Number ▼

**9**

**CORRESPONDENCE**   Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

Sholom Jacobson - Zalman Chanin
VAAD L'HAFOTZAS SICHOS
678 Lefferts Avenue                              Email VAADSICHOS @JUNO. COM
Brooklyn, NY   11203
          Area Code & Telephone Number ▶ 718 774-7200          FAX 718 774-7494

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION**   I, the undersigned, hereby certify that I am the
Check one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
          Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Sholom Jacobson                                        date ▶

Handwritten signature (X) ▼

**10**

**MAIL
CERTIFICATE TO**

Name ▼
VAAD L'HAFOTZAS SICHOS   ATTN. Sholom Jacobson

Certificate
will be
mailed in
window
envelope

Number/Street/Apartment Number ▼
678 Lefferts Avenue

City/State/Zip ▼
Brooklyn, NY   11203

**11**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.